IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37090-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IBRAHIM SULIMAN HASSAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Ibrahim Hassan appeals his conviction for first degree criminal trespass, challenging the trial court's instructions to the jury, which he argues failed to consistently inform the jury of the State's burden to prove that he knew his conduct was defined by law as a crime. Knowledge that one is committing a crime is not an element of first degree trespass, however; the knowledge required is that one is not then licensed, invited, or otherwise privileged to so enter or remain. If the instructions had a shortcoming, it was not one that prejudiced Mr. Hassan.

The State concedes Mr. Hassan's second assignment of error to the trial court's allegedly inadvertent imposition of supervision fees.

We affirm Mr. Hassan's conviction and remand with directions to strike the language requiring him to pay supervision fees.

FACTS AND PROCEDURAL BACKGROUND

Little need by said about the circumstances leading to Ibrahim Hassan being charged with residential burglary with a domestic violence (DV) allegation and second degree assault with a deadly weapon allegation. After encountering a man at a Kennewick grocery store who had earlier accused Mr. Hassan of stealing his cell phone, Mr. Hassan badgered the man, suggesting that they fight. He then followed the man and his girlfriend to their nearby apartment, which was next door to the apartment where Mr. Hassan's estranged wife lived with their two daughters. Mr. Hassan entered his estranged wife's apartment to obtain a knife, which he then used to assault the man who had accused him of the theft.

Neither Mr. Hassan's wife nor her daughters were home at the time. Mr. Hassan's wife and one of his daughters testified at Mr. Hassan's trial that he lived in Seattle and did not have permission to be in their Kennewick apartment without an explicit invitation from the wife or daughters. Mr. Hassan disputed their testimony, claiming he had a key to the apartment, knew where one was secreted outside, and was permitted to come and go as he pleased.

At trial, the trial court granted Mr. Hassan's request to give an instruction on first degree criminal trespass as a lesser included crime to the residential burglary charge. The trial court gave the following instructions relevant to first degree criminal trespass:

2

## INSTRUCTION NO. 10

A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.

Clerk's Paper's (CP) at 43.

## INSTRUCTION NO. 14

A person commits the crime of Criminal Trespass in the First Degree when he or she knowingly enters or remains unlawfully in a building.

CP at 47.

## INSTRUCTION NO. 15

To convict the defendant of the crime of Criminal Trespass in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about March 4, 2019, the defendant knowingly entered or remained in a building;

(2) That the defendant knew that the entry or remaining was unlawful; and

(3) That this act occurred in the County of Benton, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 48.

## INSTRUCTION NO. 16

A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact,

circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

CP at 49. The defense raised no objection to these instructions.

The jury found Mr. Hassan guilty of first degree criminal trespass and the second degree assault and made the DV and deadly weapon findings requested by the State. In sentencing Mr. Hassan, the trial court found him indigent and imposed only mandatory legal financial obligations (LFOs), yet it made no modification to boilerplate language in the judgment and sentence (J&S) that required Mr. Hassan to pay supervision fees. Mr. Hassan appeals.

ANALYSIS

I.    THE TRIAL COURT'S INSTRUCTIONS TO THE JURY DID NOT MISSTATE THE ELEMENTS OF FIRST DEGREE CRIMINAL TRESPASS AS ALLEGED BY MR. HASSAN

The only contested issue on appeal is whether instruction 16 erroneously and confusingly informed jurors that to be criminally liable, Mr. Hassan did not need to know his conduct was defined by law as a crime. Whether this was error turns on Mr. Hassan's contention that "first-degree trespass . . . unlike most crimes, requires the defendant knew that [his or her] conduct was unlawful." Br. of Appellant at 10.

While the challenge to the instruction is raised for the first time on appeal, a jury instruction that relieves the State of proving every essential element of a crime beyond a reasonable doubt is manifest constitutional error. *State v. Stein*, 144 Wn.2d 236, 241, 27 P.3d 184 (2001). An alleged error of law in a jury instruction is reviewed de novo. *State v. Hayward*, 152 Wn. App. 632, 641, 217 P.3d 354 (2009).

Mr. Hassan cites no reported decision that holds that knowing one's conduct violates a law is an essential element of first degree criminal trespass. We reject that construction of RCW 9A.52.070(1).

Our fundamental objective in construing a statute is to ascertain and carry out the legislature's intent, and if a statute's meaning is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "Plain meaning" analysis does not mean that we view a statutory provision in isolation, however; instead, "meaning is discerned from all that the [l]egislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11.

We will begin with the general and move to the specific. "RCW 9A.08.010 enumerates four degrees of criminal culpability: intent, knowledge, recklessness, and criminal negligence." *State v. Atsbeha*, 142 Wn.2d 904, 926, 16 P.3d 626 (2001) (Sanders, J., dissenting). The statute provides, as to knowledge:

A person knows or acts knowingly or with knowledge when:

5

(i) he or she is aware of *a fact, facts, or circumstances or result* described by a statute defining an offense; or

(ii) he or she has information which would lead a reasonable person in the same situation to believe that *facts exist* which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b) (emphasis added).  Culpability is not defined with reference to knowledge of the law, because ignorance of the law is not an excuse.  One of the "long-standing and basic principles upon which our legal system depends [is] that all sane persons are presumed to know the law and are in law held responsible for their free and voluntary acts and deeds."  *State v. Spence*, 81 Wn.2d 788, 792, 506 P.2d 293 (1973), *rev'd sub nom. on other grounds* by *Spence v. Washington*, 418 U.S. 405, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974).

RCW 9A.52.070(1), which defines the crime of first degree criminal trespass, is consistent with these principles.  It provides that "[a] person is guilty of criminal trespass in the first degree if he or she knowingly *enters or remains unlawfully* in a building."  (Emphasis added.)  We emphasize "enters or remains unlawfully" because it is a defined phrase for purposes of chapter 9A.52 RCW.  RCW 9A.52.010(2) provides that "[a] person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."  Instruction 10 told Mr. Hassan's jury that this is the meaning of "enters or remains unlawfully."  Given the definition, to prove first degree criminal trespass, the State was required to prove that a

person (1) enters or remains in a building, and (2) does so knowing that he or she is not licensed, invited or otherwise privileged to so enter or remain.

"It is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005). Mr. Hassan ignores RCW 9A.52.010(2)'s definition of "enters or remains unlawfully," however. He breaks up the phrase, with the result that the concepts of license, invitation, or privilege are gone. Instead, what he contends the State must prove to establish first degree criminal trespass is that a person (1) enters or remains in a building, and (2) does so knowing he is violating a law.

Mr. Hassan's construction conflicts with *City of Bremerton v. Widell*, 146 Wn.2d 561, 570, 51 P.3d 733 (2002), which implicitly construes the criminal trespass statute as we do—according to its plain language, and heeding the defined phrase "enters or remains unlawfully." The *Widell* court addressed one of the statutory defenses to criminal trespass: the defense that "[t]he actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him or her to enter or remain." RCW 9A.52.090(3). It held that once a defendant has offered some evidence that his or her presence was permissible under this provision, the State bears the burden to prove beyond a reasonable doubt that the defendant lacked license to enter, because the defendant's reasonable belief in his license "negate[s] the unlawful

7

presence element of criminal trespass and [is] therefore not [an] affirmative defense[ ]."
*Widell*, 146 Wn.2d at 570.

If the criminal trespass statute had the meaning given it by Mr. Hassan, then the unlawful presence element of criminal trespass would be that the defendant knew he was violating a law, not that he reasonably believed that he was licensed by the owner to remain.

Tellingly, Mr. Hassan never argued at trial that jurors should acquit him because he was ignorant of the law. The defense's closing argument, like the State's, consistently addressed whether Mr. Hassan reasonably believed he had permission to enter his wife's apartment without an invitation—not what he knew or did not know about the law. *See, e.g.*, Report of Proceedings at 385-86 ("He has license. He's been invited. He has a key. He has a right to be there.").

Mr. Hassan argues that instruction 16 is the problem, but if any of the instructions could be improved it is subsection (2) of the pattern elements instruction, which, after telling jurors that the State must prove the defendant's knowing entry or remaining in a building, tells them the State must prove beyond a reasonable doubt "[t]hat the defendant knew that the entry or remaining was unlawful." *See* 11A WASHINGTON PRACTICE, JURY INSTRUCTIONS: CRIMINAL § 60.16, at 21 (4th ed. 2016). Like Mr. Hassan's argument, this breaks up the defined phrase "enters or remains unlawfully." Subsection (2) would be improved by stating "that the defendant knew he was entering or remaining

unlawfully." If this is a shortcoming in the instruction, however, it did not prejudice Mr. Hassan.

The trial court's instructions did not misstate the law.

II.     WE ACCEPT THE PARTIES' AGREEMENT THAT THE TRIAL COURT INADVERTENTLY FAILED TO STRIKE THE REQUIREMENT THAT MR. HASSAN PAY SUPERVISION FEES

Mr. Hassan is required by his sentence to be on community custody for 18 months. Boilerplate language in his J&S provides that while on community custody, he shall "pay supervision fees as determined by DOC."[1] CP at 82; J&S, subsection 4.2(B)(7) at 6. Mr. Hassan contends that such fees are a discretionary cost that cannot be imposed on a defendant who is indigent, as he was found to be. Alternatively, he argues that the failure to waive his obligation for the fees was inadvertent and should be deemed a clerical error.

RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . [p]ay supervision fees as determined by the DOC." Since the fees are waivable by the trial court, they are discretionary LFOs, but better-reasoned cases hold that they are not a "cost" that RCW 10.01.160 provides "shall not" be imposed on an indigent defendant. *E.g.*, *State v. Spaulding*, ___ Wn. App. 2d ____, 476 P.3d 205, 211 (2020). Since the parties agree that the trial court intended to impose only mandatory LFOs, however, we deem the

---

[1] The Washington State Department of Corrections.

9

No. 37090-9-III
*State v. Hassan*

unmodified boilerplate language to be a clerical error and will direct the trial court to strike it.

The conviction is affirmed and the case remanded with directions to strike the language requiring Mr. Hassan to pay supervision fees as determined by DOC.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Korsmo, J.P.T.[2]

_____
Fearing, J.

---

[2] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.